JOHN O. SHOOK V. W. F. SHOOK ET AL.

Decided April 1, 1899.

**Homestead in City—Renting Part.**

The mere fencing off of a part of a city homestead lot, upon which a cottage is situated at the time of its purchase, from the remaining portion on which the residence is placed, and the temporary renting of the cottage, do not prevent the homestead right from attaching to both parcels, where it was originally and is still the intention of the owner, when able to do so, to use the cottage parcel for stables and servant's quarters.

ERROR from Dallas. Tried below before Hon W. J. J. SMITH.

*McCormick & Spence,* for plaintiff in error.

*Alexander, Clark & Hall,* for defendants in error.

RAINEY, ASSOCIATE JUSTICE.—The only question for determination is whether or not the real estate in controversy is a part of the homestead of W. F. Shook and wife. If so, the judgment must be affirmed.

The evidence shows that about ten years ago W. F. Shook, who was then the head of a family, and has been ever since, purchased for his homestead a lot situated on the corner of Bryan and Crockett streets in the city of Dallas. Said lot fronted 90 feet on Bryan Street and run back 180 feet on Crockett Street. About ten feet of the lot is taken up by the sidewalk. At that time there were several one-room houses on the front part of the lot. These Shook moved on the rear of said lot, put them together, added a room and made a cottage, into which he moved his family and lived with his family therein about one year, when he began the erection of an eight-room two-story residence on said lot, into which he and family moved when completed, and which they have occupied ever since. Said two-story residence was built about the center of the lot, the front being about 50 feet from Bryan Street, on which it fronted, and the rear being about 70 feet from the back line of the lot. When he first moved into the cottage he built a board fence just south of the cottage, as shown by the following sketch of the premises:

The said fence was built to protect the rear of the cottage from the view of those passing on Bryan Street, and the part of the lot south of the fence was used as a lawn until the residence was built. When Shook moved into the residence he rented the cottage, and which he has rented since, the renting being by the month, it being understood with his tenants that they would surrender possession when called upon, it being his intention

all the while, when he was able, to tear the cottage away and build thereon a servant house and stable to use in connection with his residence. There was always a gate in the fence between the cottage and the residence. Shook always cut the grass around the cottage when he cut it on the remainder of the lot. There was waterworks connected with the cottage, and he always paid the water rent on the whole property as one place. He used water out of the cottage cistern as well as out of that connected with the residence. When Shook first bought the lot he intended to use the entire lot for his homestead, and that intention has never been abandoned. When he completed his residence he did not feel justified to take the money out of his business to build the stable and servant house. For several years his business prospered, but it began to decrease, until he finally failed, and since then he has been unable to build. His intention was, and is now, to build when conditions justified it, unless he can sell, which he wants to do and has been trying to do. He has refused offers to buy the cottage, declining to sell unless he could sell the entire premises. To sell the cottage part would materially damage the other portion, rendering it less desirable as a home, as there would not remain sufficient of the lot upon which to erect suitable outhouses.

The foregoing facts show that when Shook purchased the lot he dedicated the whole of it for a home for himself and family, and has occupied and claimed it as such ever since. Unless the building of the fence and the renting of the cottage can\be considered a segregation of that part of it from the other part and an abandonment thereof for homestead purposes, then its homestead character still exists.

Where there is a segregation of a part of a homestead and same is intended to be permanently devoted to uses other than that of a home, such will be an abandonment of it as a homestead and the exemption ceases. Where, however, there is no segregation intended, and there is a temporary renting of a part of the homestead, such will not constitute an abandonment. The facts of this case show that there was no segregation intended and the renting of the cottage merely temporary,—hence there was no abandonment.

The appellant in support of his contention that the part of the lot in controversy had ceased to be a part of the homestead, cites Blum v. Rogers, 78 Texas, 530; Bente v. Lange, 9 Texas Civ. App., 328; Wolf v. Butler, 8 Texas Civ. App., 168; Hendrick v. Hendrick, 13 Texas Civ. App., 49, and others.

The facts of these cases clearly show that the segregations were permanent and same devoted to purposes inconsistent with the use as a home. The case at bar presents a different state of facts.

The facts being sufficient to sustain the judgment, it is affirmed.

*Affirmed.*