WHITLEY et al. v. ALEXANDER et al. (No. 748.)

(Court of Civil Appeals of Texas. El Paso. Oct. 25, 1917.)

1. APPEAL AND ERROR ☞1010(1)—REVIEW—FINDINGS OF FACT.

Findings of the trial court supported by direct and positive evidence cannot be disturbed.

2. HOMESTEAD ☞168—PROPERTY CONSTITUTING—SEPARATE TRACTS.

The owner of a tract of land 100 by 200 feet in one inclosure, and intended as a homestead, put cross-fences subdividing it and built a small house on the north end, which, in 1899 or 1900, they moved to a portion of the lot 44 feet by 73 feet in the southeast corner, where they lived while building a larger house on the north end. After moving into the new house they rented the small house at different times, but reserved the use of the yard for chickens, calves, and horses. It was intended to either make a barn out of the small house or sell it and have it moved, and in 1915 it was sold and removed. The tract 44 feet by 73 feet was at all times separated by a fence, containing gates and openings, from the remainder of the lot. *Held*, that even though it was intended to continue to rent such house so long as it was profitable to do so there was no segregation of this portion of the homestead, coupled with the intention to abandon it as a part of the homestead, so as to constitute an abandonment.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by Mrs. Sallie Alexander and others against Frank Whitley and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Ritchie & Cousins, of Mineral Wells, for appellants. W. P. Smith and J. W. Birdwell, both of Mineral Wells, for appellees.

HARPER, C. J. This is an appeal from a judgment enjoining the sale of certain property under order of sale, under the holding by the trial court that it was the homestead of appellee, therefore not subject to forced sale.

The trial court filed the following findings of fact, which we adopt:

"(1) The defendants in open court admitted that all of the property in controversy, except a small portion being 44 feet north and south by 73 feet east and west, out of the southeast corner of said property, is and was the homestead of the plaintiffs at all times at, and since, and before, any attempt was made by the city of Mineral Wells to fix a lien on same, and that the plaintiff is entitled to have the injunction perpetuated as to all of said property except said 44x73 feet.

"(2) It was agreed in open court by plaintiffs and defendants that if said 44x73 feet was the homestead of the plaintiffs on the 23d day of November, 1914, the day on which the city of Mineral Wells attempted to fix a lien on same for pavement, then no lien was fixed, and that the plaintiffs are entitled to have said injunc-

tion perpetuated as to all of the property in controversy. But if said 44x73 feet was not the homestead of the plaintiffs at the time the city of Mineral Wells attempted to fix a lien on same, then the lien did attach to said 44x73 feet, and the defendants would be entitled to have the temporary injunction dissolved as to said 44x73 feet.

"(3) On the question as to whether or not said 44x73 feet of land was the homestead of the plaintiffs Sallie Alexander and G. F. Alexander on the 23d day of November, 1914, I find the facts to be as follows:

"(a) That the plaintiffs, then being husband and wife, purchased the property in controversy about the year 1893, said property being described as follows: 100x200 feet off the east side of lot No. 1, in block No. 17, of the Lynch addition to the city of Mineral Wells in Palo Pinto county, Tex., beginning at the N. E. corner of said lot and block, thence south 200 feet, thence west 100 feet, thence north 200 feet, thence east 100 feet to the place of beginning.

"(b) That soon after the purchase of said property by the plaintiffs they fenced same in one inclosure, and built a small house on the north end of same, and moved into said house with the intention of making said property their homestead; that they put cross-fences on said property, making a horse and calf lot on the south end of said property covering said 44x73 feet, with a barn on another part, and a garden on another part; that every part of said property was used by the plaintiffs for the purposes of a home.

"(c) That in about 1899 or 1900 plaintiffs moved said house from the north end of said lot to the southeast corner of said lot and on the 44x73 feet in controversy in this suit; that they moved into and occupied said house for three or four years; that, when they moved said small house from the north to the south end of said lot, they did so with the intention of building a better house on the north end of the lot for a residence or home; that, after living in said house on the said 44x73 feet for three or four years, the plaintiffs built a larger house on the north end of said lot and moved into same, and have resided there ever since, that is, for about 13 or 14 years; that it was the intention of the plaintiffs when they moved into the new house to make a barn out of the small house, or to sell it and have it removed from the premises.

"(d) That plaintiffs have, since moving into the new house, rented the little house to different parties for short periods of time; that said renting was temporary, but that said house, up to within about a year before same was removed, was at all times for rent; that the fences and cross-fences have never been changed in any way since the small house was built on the north end of the lot, except to set the fence aside while the small house was being moved, and then it was replaced in the same position and has remained the same at all times since; that when said small house was rented, only the house was rented, and the plaintiffs reserved the use of the yard for their chickens and calves and horses.

"(e) I find that the uncontradicted evidence shows that said small house was moved off of said 44x73 feet and sold on the 1st day of February, 1915; that the last tenant who occupied said house vacated same on December 15, 1914, and that said house was not for rent, and plaintiffs refused to rent same after that date; that, after said house was sold and moved off on the 1st day of February, 1915, said 44x73 feet, together with the lots on the southwestern part of the premises, were used for the calves, chickens, and horses; that the plaintiffs always refused to sell any part of said premises because they wanted to keep all of it as a homestead; that

every part of said premises was connected with every other part of said premises by gates, and that no part of said premises has ever been segregated from any other part of said premises, and that, all of said premises is and has been for more than 20 years inclosed in one fence, and that said cross-fences have remained in the same place for more than 20 years."

### Additional Findings.

"(1) That, at all times from the date plaintiff moved from the house on the 44x73 feet in controversy to the new residence erected on another part of the property up to the present time, the 44x73 feet was separated by fence, which contained gates and openings, from the remainder of the lot. These fences have been there for years.

"(2) That during the time the plaintiffs rented said property they pastured the Bermuda grass on said lot with their horse, and that the tenants would tell them to pasture the grass rather than to have it mowed down.

"(3) The plaintiffs never at any time during their ownership of said property offered this place for sale, and have refused to sell it."

By their seven assignments of error, appellants attack the findings of fact and the judgment for the following reasons: (1) The undisputed evidence shows that the portion of land sought to be sold is not a part of the homestead; (2) and (3) the court erred in holding that the renting was only temporary; (4) the evidence did not justify the finding that plaintiff reserved the use of the rented premises as a part of their yard; (5) that the evidence does not justify the finding that when plaintiff moved out of the small house they intended to make a barn of it or sell it; (6) that the evidence does not support the finding that no part of the premises had ever been segregated from the homstead; (7) erred in refusing to find that plaintiffs intended to continue to rent the premises so long as it could be done profitably.

It is apparent that the only question for determination is whether or not the real estate in controversy is a part of the homestead of G. F. Alexander and his wife, Mrs. Sallie Alexander.

[1] We find direct and positive evidence in the record to support the findings of fact by the trial court; therefore we are not authorized to disturb them.

It would serve no purpose to quote from the testimony of the witnesses the parts which we conclude support the findings complained of—so refrain from doing so.

[2] By the seventh assignment appellant urges that the court, under the facts, should have found that the plaintiffs intended to continue to rent the premises so long as it was profitable to do so. Under the evidence the court was justified in refusing to make the finding requested, but whether he was justified or not was immaterial, for the test is, was there such a segregation of this portion of the homestead coupled with an intention to abandon it as a part thereof as to constitute an abandonment? We think not.

The facts are sufficient to sustain the findings of the trial court that there was no segregation intended, and the renting of the cottage was merely temporary, hence there was no abandonment. Drought & Co. v. Stallworth, 45 Tex. Civ. App. 159, 100 S. W. 188; Shook v. Shook, 21 Tex. Civ. App. 177, 50 S. W. 731.

Finding no error in the record the cause is affirmed.